IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RONALD MICHAEL CAUTHERN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:04-1100 |
| ) | Judge Trauger |
| RICKY BELL, Warden, ) | |
| ) | |
| Respondent, ) | |
| ) | |

## MEMORANDUM

Pending before the court is petitioner Ronald Michael Cauthern's Motion to Alter and Amend Pursuant to Fed. R. Civ. P. 59(e)(Oral Argument Requested) (Docket No. 170). For the reasons discussed herein, this motion will, for the most part, be denied, although the court will amend its previous judgment to issue a certificate of appealability as to one issue.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

On March 31, 2010, this court issued an Order in this 28 U.S.C. § 2254 case in which the petitioner, a death row inmate, challenges the constitutionality of his convictions and death sentence. (Docket No. 168.) In that Order, the court denied the petitioner's motion for summary judgment, granted the respondent's motion for summary judgment, denied the petitioner's petition (and all amendments thereto) for federal *habeas corpus* relief, declined to issue a certificate of appealability as to any issue raised by the petitioner, dismissed the action, and

---

[1] As these matters can be readily resolved on the papers filed by the parties, there is no need for oral argument.

1

entered judgment against the petitioner. (*Id.*)

That Order was accompanied by a 168-page Memorandum, which, in thorough detail, recounted the factual and procedural background of this matter, which stems from the January 1987 strangulation murder of Patrick Smith and the rape and ligature strangulation murder of Rosemary Smith in the couple's Clarksville, Tennessee home. (Docket No. 167 at 2-3.) The petitioner and another individual, Brett Patterson, were charged and convicted in Tennessee state court, with the petitioner ultimately being sentenced to death for Rosemary's murder (and life imprisonment for Patrick's) at a 1995 re-sentencing hearing in Tennessee state court. (*Id.* at 27.) The facts, procedural history and relevant law were discussed in exhaustive detail in that Memorandum and need not be recited here.

On April 28, 2010, the petitioner filed the pending Motion to Alter and Amend the March 31, 2010 judgment. While asserting that "all claims in [the] 2254 Petition are meritorious," and that none of those claims are waived, the petitioner "only asserts . . . those allegations that satisfy the [strict] Rule 59 standards" for altering and amending a judgment. (Docket No. 170 at 3.)

Specifically, the petitioner asserts that the court erred in five main areas: (1) it refused to consider relevant and applicable precedent that has arisen since the relevant state court proceedings; (2) it improperly evaluated the petitioner's claims regarding the prosecutor's improper closing argument during the 1995 re-sentencing hearing; (3) it improperly evaluated the petitioner's arguments regarding the exclusion of potential mitigation evidence at the 1995 re-sentencing; (4) it made errors of fact and law when considering the petitioner's *Brady* claim as it related to the "alleged suppression of evidence regarding whether a wine cooler had been

poured on Rosemary's body" during the course of the crime (*See* Docket No. 167 at 56); and (5) the court made errors when evaluating the petitioner's ineffective assistance of counsel claim. (See *generally* Docket No. 170 at 3-17.) On May 21, 2010, the respondent filed a timely response to the petitioner's motion. (Docket No. 178.)

## ANALYSIS

**I.    Standard of Review**

Federal Rule of Civil Procedure 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The district court may grant a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) for any of four reasons: (1) because of an intervening change in controlling law; (2) newly discovered evidence; (3) to correct a clear error of law; or (4) to prevent manifest injustice. *Abnet v. Unifab Corp.*, 2009 WL 232998, *3 (6th Cir. Feb. 3, 2009). In discussing the movant's substantial burden under Rule 59(e), the Sixth Circuit has held that a "motion under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (internal quotation omitted).

The Rule 59(e) vehicle does not exist to provide the movant with a second opportunity to make its previous argument; that is, a Rule 59(e) motion "is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Moreover, the movant should not use a Rule 59(e) motion to raise or make arguments "which could, and should, have been made before judgment issued." *Id.* (internal quotations omitted);

3

*see also Roger Miller Music, Inc.*, 477 F.3d at 395 ("under Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.")

In light of the "narrow purposes" of the motion and the judicial system's interests in the finality of judgments and in the conservation of judicial resources, Rule 59(e) motions "typically are denied." *Miller v. Bell*, 655 F. Supp.2d 838, 844 (E.D. Tenn. 2009)(internal quotation omitted). Here, the petitioner does not rely on newly discovered evidence but, rather, claims that the court made a series of "manifest" errors of law and fact in denying several of the petitioner's grounds for federal *habeas* relief. (Docket No. 170 at 3.)

**II.    Analysis**

    **A.    Refusal to Consider Applicable Precedent**

The petitioner first claims that, in its March 31, 2010 Memorandum, "[t]his Court committed a manifest error of law in its application of the Anti-terrorism and Effective Death Penalty Act ('AEDPA'), which corrupted the merits review of every single one of Petitioner's Habeas Grounds for Relief." (Docket No. 170 at 3.) Specifically, the petitioner claims that the court interpreted the AEDPA too broadly in not considering Supreme Court precedent that did not exist at the time of the relevant state court rulings in this case. (*Id.*) The petitioner points to the court's statement in the Memorandum that "for cases governed by the AEDPA, only Supreme Court cases already issued at the time of the relevant state court decision can offer guidance . . . ." (Docket No. 167 at 71)(specifically discussing ineffective assistance of counsel claims).

4

The petitioner claims that this "erroneous application" of the AEDPA particularly influenced the court's analysis of the petitioner's ineffective assistance of counsel claims and resulted in the court's failing to "apply [the] analysis" of Supreme Court cases such as *Wiggins v. Smith*, 539 U.S. 510 (2003), *Rompilla v. Beard*, 545 U.S. 374 (2005), and *Porter v. McCollum*, 130 S.Ct. 447 (2009), even though, as the petitioner concedes, the court cited *Wiggins* and *Rompilla* in conjunction with discussing the "general standards" for analyzing an ineffective assistance of counsel claim. (Docket No. 170 at 4.)

The petitioner also notes that a series of recent Sixth Circuit ineffective assistance of counsel cases have discussed *Rompilla*, *Wiggins*, and *Porter*, indicating that the court should consider these cases even if they were not "on the books" at the time of the relevant state court proceedings. (*Id.* citing *Sneed v. Johnson*, 600 F.3d 607, 610-11 (6th Cir. 2010), *Mason v. Mitchell*, 543 F.3d 766, 772-73 (6th Cir. 2008), and *Jells v. Mitchell*, 538 F.3d 473, 490-91 (6th Cir. 2008)). In conclusion, the petitioner argues that, because these recent Supreme Court cases "merely explain[]," and are "squarely governed" by the basic ineffective assistance of counsel standard set out in the Supreme Court's landmark *Strickland v. Washington* decision, they may be relied upon by this court regardless of when the state court proceedings occurred. (Docket No. 170 at 4-5)(quoting *Jells*, 538 F.3d at 491 n.2, *Wiggins*, 539 U.S. at 522.)

The petitioner's labored argument fails to show that the court made a manifest error of law. First, as the petitioner appears to recognize, throughout the Memorandum, the court, as is appropriate, relied upon more recent Supreme Court case law to explain the basic legal standards that were applied by the Tennessee courts in evaluating the petitioner's claims. (*See e.g.* Docket

5

No. 167 at 31, 38-39, 49, and 71-72.)  Under Section 2254(d)(1), however, this court ultimately must evaluate whether the relevant state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Law is only "clearly established" for purposes of this analysis if the law was in place at the time of the relevant state court ruling. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Williams v. Coyle*, 260 F.3d 684, 703 (6th Cir. 2001).  The petitioner's objection to the court's recognition of this settled legal principle is misplaced.

Also, as discussed further below, more detailed analysis of *Rompilla*, *Wiggins*, and *Porter* was not necessary to evaluate the ultimate merits of the petitioner's ineffective assistance of counsel claim.  In large part, these cases simply apply the well-settled and long-standing *Strickland* test, that is, whether counsel's deficient performance prejudiced the petitioner.  *See Porter*, 130 S.Ct. at 452-53; *Wiggins*, 539 U.S. at 521, *Rompilla*, 545 U.S. at 380-81.  This fact-intensive test is the same test that the court applied in evaluating the petitioner's claims, with citation to *Rompilla* and *Wiggins*.  (Docket No. 167 at 72.)  In light of all of this, the petitioner's first basis for Rule 59(e) relief is without merit.

        **B.**        **Issues Surrounding Improper Closing Argument/Prosecutorial Misconduct**

In his petition, the petitioner's "first ground" for federal *habeas* relief claimed that the prosecutor's improper closing argument at the 1995 re-sentencing hearing violated his constitutional rights.  (Docket No. 167 at 30.)  As discussed in the Memorandum, the prosecutor's repeated assertion that the petitioner was "the evil one" was patently improper, but

6

the court concluded that the petitioner could not sufficiently demonstrate the required prejudice. (*Id.* at 32-36.)

Here, the petitioner argues that "[t]his court committed a manifest error of law in not addressing the Sixth Circuit's decision in *Bates v. Bell*, 402 F.3d 635 (6th Cir. 2005)." (Docket No. 170 at 5.) The petitioner goes on to vaguely state that "[t]he Court's conclusion in Petitioner's case cannot be reconciled with *Bates*." (Docket No. 170 at 5.) The petitioner does not provide further explanation of this particular argument or recognize that the court repeatedly cited *Bates* and the related four-factor test when discussing the petitioner's prosecutorial misconduct argument.[2] (Docket No. 167 at 30-32.)

Next, the petitioner claims that the court improperly evaluated the prejudice issue. (Docket No. 170 at 6.) That is, in evaluating a prosecutor's statements during the sentencing phase, the court is to consider whether the prosecutor's misconduct was such that it "foreclose[d] the jury's consideration of . . . mitigating evidence" that would inform the decision whether to impose the death penalty, not whether the prosecutor's conduct was such that it foreclosed the jury's evaluation of guilt or innocence. (Docket No. 170 at 6 quoting *Bates*, 402 F.3d at 648-49.)

While the petitioner alleges that the court missed this distinction, a basic review of the Memorandum demonstrates that the petitioner is incorrect. For instance, the court stated that, "[i]n the context of a death penalty case, the question is whether the conduct alleged 'influenced the jury's decision between life and death.'" (Docket No. 167 at 32 quoting *Beuke v. Houk*, 537

---

[2]In *Bates*, the Sixth Circuit vacated Bates' death sentence based upon prosecutorial misconduct, but that case obviously involved different facts and different prosecutor statements and, therefore, a different, factually dependent, prejudice analysis. 402 F.3d at 642-50.

7

F.3d 619, 659 (6th Cir. 2008)). After reviewing the remarks at issue and the state court decisions that considered those remarks, the court stated, again, that "the ultimate question before this court is whether [the remarks] 'influenced the jury's decision between life and death." (Docket No. 167 at 36.) Clearly, the court did not miss the distinction here.[3]

Finally, the petitioner contends that the court's conclusion that the prosecutor's remarks did not ultimately "influence the jury's decision between life and death" was improperly influenced by this court's *post hoc* rationalizations, that is, this court did not analyze the state court's reasoning on the issue but provided its own explanation for why the comments were ultimately not influential. (Docket No. 170 at 6-8.) Again, this argument is without merit. In the Memorandum, the court quoted from the Tennessee Supreme Court's decision on this issue and concluded that "[t]he record supports the Tennessee Supreme Court's determination" that the remarks "did not . . . influence[] the jury's decision between life and death." (Docket No. 167 at 36.) The court then went on to explain that, given factors such as (1) the gruesomeness of the crime, (2) the outlandish and unbelievable nature of the remarks, and (3) the jury instructions, the Tennessee Supreme Court's decision did not run afoul of the standard set by Section 2254(d). (*Id.* at 37.) The petitioner obviously disagrees with the result reached by the

---

[3]In the same section, the court did state, "where the evidence pointing to the defendant's guilt is strong, and the prosecutor's improper comments go to the nature and intent of the crime rather than the defendant's guilt or innocence, *habeas corpus* relief is not warranted if 'the jury would probably have returned the verdict of guilty anyway.'" (Docket No. 167 at 32 quoting *Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003)). This quotation, while perhaps misplaced, was provided in a general overview of the law, and, as discussed above, it is clear from the application of *Beuke* that the court applied the correct standard.

court, but he has certainly not shown that the court committed a "manifest" error of law or fact.[4]

### C. Exclusion of Mitigation Evidence

As discussed in detail in the Memorandum, in the petitioner's second *habeas* claim, he argued that "the trial court violated his [constitutional] rights . . . at the 1995 re-sentencing hearing by not permitting him to enter into evidence a letter from his son telling the petitioner that 'he loved [him] and was looking forward to seeing him again.'" (Docket No. 167 at 37.) The Tennessee Supreme Court concluded that the letter was improperly excluded at the 1995 re-sentencing, but, because the re-sentencing jury was presented with a picture of the petitioner with his son and evidence that the petitioner had a young son who visited him in prison occasionally, the Tennessee Supreme Court concluded that the error was "harmless" as a matter of law. (*See id.* at 40.) The petitioner now claims that, in finding that the Tennessee Supreme Court did not run afoul of the Section 2254 standard, this court made "manifest" errors of fact and law. (Docket No. 170 at 8-10.)

As to the error of fact, the petitioner contends that, in light of the fact that the Tennessee Supreme Court found that the evidence was improperly excluded, the court incorrectly

---

[4] In the Memorandum, the court agreed with the Tennessee Supreme Court's conclusion that the remarks, while inappropriate, had been "invited" by counsel for the petitioner, who suggested that "civilized societies" do not kill others. (Docket No. 167 at 36.) In the present motion, the petitioner claims that it was the State that initially raised the concept of what "civilized societies" do. (Docket No. 170 at 8.) This is not a weighty dispute. Invited or not, the remarks were obviously improper, and, as discussed above, the court's conclusion as to the effect of those remarks on the jury's decisionmaking rested on numerous other factors besides whether or not the remarks were "invited."

9

determined that the evidence was "cumulative." (*Id.* at 8-9.) A review of the Memorandum shows that this court only used the term "cumulative" when describing why the Tennessee Court of Criminal Appeals rejected the petitioner's argument on this point. (Docket No. 167 at 39.) Therefore, this argument is without merit.

As to the error of law, the petitioner contends that "the failure to consider and give effect to mitigation is a structural defect where the evidence must be considered at a new sentencing hearing." (Docket No. 170 at 9)(citing *Skipper v. South Carolina*, 476 U.S. 1, 8 (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 117 (1992); *Davis v. Coyle*, 475 F.3d 761, 774-75 (6th Cir. 2007)). That is, the petitioner contends that, when mitigating evidence is improperly excluded, a re-sentencing is absolutely required with no recourse to a "harmless error" test. (Docket No. 170 at 9-10.) As discussed in the Memorandum, in at least one case, the Sixth Circuit, interpreting Supreme Court law, has held that, where mitigating evidence has been improperly excluded, the court is to examine whether the state has shown that the "error was harmless beyond a reasonable doubt." *Carter v. Bell*, 218 F.3d 581, 594 (6th Cir. 2000).

The Supreme Court authority provided by the petitioner here underscores the importance of admitting all relevant mitigating evidence, but it does not clearly establish that recourse to a harmless error test is prohibited. The cited provision in *Eddings* states that, as a general proposition, "state courts must consider all relevant mitigating evidence and weigh it against the evidence of the aggravating circumstances." 455 U.S. at 117. In *Skipper*, the Supreme Court, in responding to the state's argument, considered whether the improper exclusion of mitigating evidence was "harmless" and concluded that it was "reasonably likely that the exclusion of [the

10

mitigating] evidence . . . may have affected the jury's decision to impose the death sentence. Thus, under any standard, the exclusion of the evidence was sufficiently prejudicial to constitute reversible error." 476 U.S. at 8.

In *Davis*, the Sixth Circuit's decision to remand for a new sentencing hearing following the exclusion of mitigating evidence appears to have been largely premised on the fact that the court could not evaluate the improperly excluded mitigation evidence because the evidence itself was not in the record; that is, the record only contained a summary of the evidence. 475 F.3d at 774-75. That said, after recognizing that "no factual basis for re-weighing" of the mitigating evidence existed, the Sixth Circuit, citing *Skipper*, explicitly stated that, "when a trial court improperly excludes mitigating evidence or limits the fact-finder's consideration of such evidence, the case must be remanded for a new sentencing hearing." *Id.*

In light of the fact that the Sixth Circuit recognized a harmless error test in *Carter v. Bell*, the fact that the Supreme Court considered such a test in *Skipper*, and the context-specific nature of the Sixth Circuit's broad statement in *Davis*, the petitioner has failed to show that the court made a "manifest error" of law in not rejecting the Tennessee Supreme Court's application of a harmless error test here. Indeed, as indicated in the Memorandum, this is precisely the type of situation that justifies a "harmless error" test. The mitigating evidence at issue is simply a son's note to his father, saying that the son loves the father and hopes to see him again. The jury was well aware that the petitioner had a young son who visited him. The court is confident in the conclusion reached by the Tennessee Supreme Court that the inclusion of this letter, in light of the horrific circumstances of the crime, would, in all likelihood, not have had any impact on the

11

re-sentencing jury's conclusions as to the propriety of a death sentence for the petitioner.

However, upon reconsideration of the broad language in *Davis*, which cites *Skipper*, the court is no longer convinced that the petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Therefore, the court will amend its previous judgment to issue a certificate of appealability on the issue of whether the Tennessee Supreme Court's application of a harmless error test to the improper exclusion of mitigating evidence was contrary to, or involved an unreasonable application of, clearly established federal law.

### D. The "Wine Cooler" Issue

This section of the petitioner's current motion relates to the Memorandum's analysis of the petitioner's *Brady* claim, specifically regarding the "alleged suppression of evidence regarding whether a wine cooler had been poured on Rosemary's body." (Docket No. 167 at 56.) As discussed in the Memorandum, there was testimony at the 1988 criminal trial and the 1995 re-sentencing from Joe Denning that the petitioner told him that the petitioner had poured a wine cooler on Rosemary's body during the course of the rape and murder. (*Id.*) The petitioner now claims that the police records from the investigation into the Smith murders (including interviews with Denning and forensic evidence) contain no indication of this unpleasant detail, and these records, which, in their silence, discredit Denning's account, were suppressed in violation of *Brady*. (*Id.*)

In the Memorandum, the court concluded that this claim was procedurally defaulted for purposes of federal *habeas* review. (*Id* at 69.) In performing the legal analysis required to reach this conclusion, however, the court also concluded that the petitioner's argument was "without

12

merit." (*Id.*) That is, a viable *Brady* claim requires a showing of prejudice from the improper suppression of evidence, and the petitioner could not show that he was prejudiced by any suppression because the wine cooler testimony had no bearing on the petitioner's guilt for the crimes of which he was convicted and because, aside from the wine cooler testimony at the 1995 re-sentencing, there was "an abundance of other evidence . . . to prove that Rosemary's murder was a horrible, drawn-out affair," justifying the HAC (heinous, atrocious and cruel) aggravator that was the single aggravating circumstance relied upon by the state at the 1995 hearing to justify the death penalty. (*Id.* at 66-68.)

Again, the petitioner claims that the court committed errors of fact and law in the Memorandum. As to the error of fact, the petitioner claims that the court erred "in not assuming that the records supported Petitioner's claim"; that is, the court should have clearly assumed that the investigatory and forensic records, which were not in the record at the time that the Memorandum was issued, bore out the lack of support for Denning's claims that the petitioner argued that they did. (Docket No. 170 at 10.) The petitioner has since filed, under seal, records from the investigation into the Smiths' murders that, indeed, appear silent on the wine cooler issue. (Docket No. 172.) However, as can be plainly seen in the Memorandum, the court did assume the correctness of the petitioner's factual argument in the analysis; the court merely noted that the record, at that point, did not clearly support the court's assumption. (Docket No. 167 at 64.) This argument is, therefore, without merit.

As to errors of law, the petitioner argues that the court improperly (1) "held that the prosecutors were under no obligation to obtain knowledge of the records," (2) concluded that the

13

petitioner should have known, at the time of the relevant proceedings, that the investigatory records were favorable to his position here, and (3) found that "prejudice . . . cannot be met in the circumstance that relates solely to impeachment of a witness." (Docket No. 170 at 10-12.) Again, as discussed in the Memorandum, the court assumed all relevant points in the petitioner's favor and found that the petitioner could not demonstrate prejudice under *Brady* because the discrediting of the wine cooler testimony would not have made a difference in guilt versus innocence or life versus death. (Docket No. 167 at 66-68.) The petitioner cannot effectively challenge this key point and, therefore, whatever the merits of the arguments above, the petitioner has not shown that the court erred in dismissing this aspect of the petitioner's *Brady* claim.

### E.     Ineffective Assistance of Counsel

In his *habeas* petition, the petitioner claimed that his 1995 re-sentencing counsel was ineffective in terms of developing testimony from "Petitioner's family, friends, ex-wife and potential expert[s]," who, the petitioner argues, would have shed light on the petitioner's difficult upbringing. (Docket No. 170 at 12.) In the Memorandum, the court addressed these claims under the *Strickland* standard, which, as noted above, requires that the petitioner be able to show that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 691-92 (1984). In the interest of completeness, the court examined both prongs of the *Strickland* test and concluded that, as to developing this testimony, even if the petitioner could show deficient performance, he could not show prejudice, largely because of the horrific circumstances of the crime, the unflattering nature of some of the proposed testimony, and the

14

relative unfamiliarity of some of the potential witnesses with the petitioner. (*See* Docket No. 167 at 69-88.)

In his present motion, the only comment that the petitioner makes on prejudice in this context is, "[g]iven the weight of the testimony from family, friends, his ex-wife and the expert, there is a reasonable probability that at least one juror would have struck a different balance," thereby satisfying the prejudice prong of *Strickland*. (Docket No. 170 at 14.) As the petitioner is simply re-arguing the prejudice prong, he is not entitled to Rule 59(e) relief on this issue, and, therefore, it is not necessary to consider his arguments related to the court's evaluation of deficient performance.

Also, in the *habeas* petition, the petitioner claimed that his counsel failed to adequately investigate Patterson's involvement in a 1981 murder in New Mexico. (*See* Docket No. 167 at 88.) As the petitioner recognizes, in the Memorandum, the court assumed deficient performance as to this issue and moved on to an analysis of prejudice. (Docket No. 170 at 14.) The court also assumed that evidence tying Patterson to that crime would have been admissible. (Docket No. 167 at 96.) Despite this assumption, the petitioner argues that the court should not have assumed, but rather decided, that the evidence would have been admissible. (Docket No. 170 at 14-16.)

The petitioner concludes with a brief argument challenging the court's conclusion that the petitioner was not prejudiced by any deficient performance. The petitioner argues that the court should have (1) exclusively focused on how this evidence would have weighed on the jury's consideration of the HAC aggravator and (2) considered the deposition testimony of

15

attorney Poland (the petitioner's 1995 re-sentencing counsel) in this case, as he testified that he believed that the evidence would have made a difference in the jury's determination of life versus death for the petitioner. (Docket No. 170 at 16-17.)

In the Memorandum, the court clearly concluded that, even if there was evidence tying Patterson to another murder, there was still ample testimony in the record that indicated that the petitioner had committed a heinous, atrocious and cruel crime; that is, there was plenty of evidence on which the jury would have still relied to determine that the HAC aggravator should apply to the petitioner, regardless of Patterson's previous crimes. (Docket No. 167 at 99.) The petitioner is simply re-arguing his case here, and, therefore, his request for Rule 59(e) relief on this ground will be denied.

## CONCLUSION

For the reasons discussed herein, the petitioner's Motion to Alter and Amend will be denied in every respect, except that the court will amend its previous judgment to issue a certificate of appealability on the "mitigating evidence" issue discussed herein.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

16

Case 3:04-cv-01100    Document 179    Filed 05/28/10    Page 16 of 16 PageID #: 2301